```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF TEXAS
                          HOUSTON DIVISION


ERNEST LEE McKNIGHT,              §
TDCJ-CID #1226211,                §
                                  §
            Plaintiff,            §
                                  §
v.                                §   CIVIL ACTION NO. H-06-3674
                                  §
BRAD LIVINGSTON, et al.,          §
                                  §
            Defendants.           §
```

## MEMORANDUM OPINION AND ORDER

Ernest Lee McKnight, an inmate of the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), has filed a prisoner civil rights complaint against TDCJ-CID officials. He has also filed an Application to Proceed In Forma Pauperis. This action will be dismissed as frivolous.

### I.  McKnight's Allegations and the Relief Sought

McKnight, who has filed fourteen prisoner civil rights complaints in the federal district courts of Texas,[1] states that he

---

[1] At least two of the complaints were dismissed as frivolous. McKnight v. Cluff, No. H-04-2575 (S.D. Tex. Sept. 24, 2004); McKnight v. Scott, No. 1:00cv0315 (E.D. Tex. May 21, 2001). A third action, McKnight v. Harris County Medical Dept., No. H-96-1809 (S.D. Tex. Apr. 25, 1997), was dismissed when the court found that McKnight had failed to name an individual who could be sued under 42 U.S.C. § 1983.  The rest were dismissed for want of prosecution or pursuant to McKnight's motion for voluntary dismissal.

was threatened and assaulted by another prison inmate while he was at the TDCJ-CID Ellis I Unit near Huntsville, Texas. See Complaint, Docket Entry No. 1. He contends that he was injured due to TDCJ-CID guards' negligence. He also claims that he was denied proper medical treatment after the assault.

McKnight states that he was having problems with inmate Larry Weaver and that he complained to guards about his difficulties. See Docket Entry No. 1, at 6. However, McKnight states that he did not want to create problems and did not seek criminal charges. Id. On or about December 30, 2005, an argument broke out over McKnight's proximity to the television in the prison day room. As the argument progressed Weaver announced that he wanted to kick a certain part of McKnight's lower anatomy, and McKnight responded that they could fight it out downstairs. Id. However, Weaver declined the invitation, and the two men retreated to their neighboring cells.

McKnight was later charged with a disciplinary infraction relating to the confrontation and was found guilty at a hearing. Id. at 6-7. In addition, McKnight was assigned to another cell and placed under restrictions. Although the men had been separated, Weaver later managed to hit McKnight in the eye as he was being escorted to the showers. McKnight was then taken to the infirmary, and his wound was stitched. Id. at 7.

McKnight filed a written declaration implicating Weaver, and the two prisoners were assigned separate cells in what is known at TDCJ-CID as 'Super-Seg.'[2] Docket Entry No. 1, at 8. However, they were still living in the same area, and McKnight alleges that he received threats from Weaver and fellow gang members while he was in his cell. Id. McKnight asserts that the placement was unfair since Weaver had a history of multiple assaults while McKnight had just one assault on his record. Moreover, McKnight believes that he is vulnerable to assault even while locked up in his cell.

McKnight generally complains that the conditions at Ellis I are dangerous. He expresses dissatisfaction with the manner in which the guards conduct themselves and alleges that they favor gang members. Id. at 10. He also makes broad, unsubstantiated allegations that he is the victim of a conspiracy and retaliation by guards who have been spreading rumors that he is crazy. He believes that some guards are trying to encourage other inmates to fight him.

McKnight complains that the wound above his left eye still hurts. Id. at 9. He was issued a medical pass for an ice pack and was given medication. McKnight seeks a transfer to a medical unit and compensation for his injuries. Id. at 5.

---

[2]Super-Seg is a highly restrictive custody assignment, which is often used to protect inmates from physical assaults. See Martinez v. Lueva, 85 Fed. Appx. 358 (5th Cir. 2003) (not selected for publication).

## II.  Analysis

McKnight has been transferred to the Estelle Medical Unit. See Docket Entry No. 2, Texas Department of Criminal Justice - In Forma Pauperis Data. Consequently, his request for a transfer has been rendered moot. Oliver v. Scott, 276 F.3d 736 (5th Cir. 2002); Herman v. Holliday, 238 F.3d 660 (5th Cir. 2001); Cooper v. Sheriff, Lubbock County, Tex., 929 F.2d 1078, 1084 (5th Cir. 1991).

Moreover, McKnight's allegations fail to show that any prison official violated his civil rights. Under the Eighth Amendment prisoners have a right to be protected from violence at the hands of other prisoners. Farmer v. Brennan, 114 S.Ct. 1970, 1976 (1994). However, the Eighth Amendment mandates 'reasonable' safety, not 'absolute' safety. See Newton v. Black, 133 F.3d 301, 307 (5th Cir. 1998). Mere negligence on the part of prison officials is insufficient to establish Eighth Amendment culpability. Davidson v. Cannon, 106 S.Ct. 668, 670 (1986). A prison official can only be held liable if he had deliberately ignored a clear danger to a prisoner after the official had been made aware of the danger. Farmer, 114 S.Ct. at 1979. A prisoner's vague fears of being attacked are not sufficient notice to inform prison officials under this standard. See Babcock v. White, 102 F.3d 267, 271-72 (7th Cir. 1996).

McKnight's allegations reveal a situation involving two belligerent prisoners arguing over trivial matters such as who gets

the best spot to watch television.  This is often the predicament confronting prison officials who must serve as referees, as well as custodians, over incarcerated individuals who are not known for their civility or their ability to negotiate amicably or reasonably with other individuals.  See McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983), citing Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973).  Every day prison officials must make decisions as to whether a dispute between two prisoners is a genuine threat to their safety or merely a routine dispute that will soon be forgotten.  See, e.g., Newton v. Black, 133 F.3d 301, 308 (5th Cir. 1998).  Sometimes, an official makes an incorrect assessment regarding the seriousness of the situation and someone gets hurt; however, the official is entitled to qualified immunity and cannot be held liable if he made a good faith error.  Id.

 McKnight asserts that he complained about Weaver, but he did not make any explicit statement indicating that Weaver was a real threat to his safety.  Without such a warning, the prison officials could not have known that there was a substantial risk to McKnight's safety to the extent that they could be found to be deliberately indifferent.  Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995).  McKnight admits that he was willing to fight Weaver at one point and that he was disciplined for his aggressive behavior.  Consequently, it would be difficult to view him as a passive inmate vulnerable to threats from more combative

individuals.  See, e.g., Farmer, 114 S.Ct. at 1975 (prisoner-plaintiff, although male, was an obvious target because he had obvious feminine features and was a transvestite).  When a conflict arose between McKnight and Weaver, the two men were separated from each other in a restricted and controlled living area.  Unfortunately, the efforts to isolate the pugnacious inmates were insufficient, and Weaver was later able to injure McKnight by hitting him in the hallway.  The brief lapse in security that allowed Weaver to strike a single blow does not demonstrate that defendants were engaging in reckless behavior knowing that they were endangering McKnight.  See Jones v. Diamond, 594 F.2d 997, 1020 (5th Cir. 1979) (isolated reports of minor scuffles do not support a finding of a pattern of indifference in violation of the Constitution).

McKnight was given immediate medical attention after Weaver hit him.  His wound was stitched and cold compresses were applied.  Such treatment is an adequate response to McKnight's basic needs, and he has not been denied medical care in violation of the Eighth Amendment standard for prisoners.  See Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995).  There is no indication that any prison official was deliberately indifferent to McKnight's need for medical care.  See Estelle v. Gamble, 97 S.Ct. 285, 292 (1976).  Furthermore, McKnight's complaint does not focus on the care the officials gave him after Weaver's assault as much as his resentment at being placed under similar restrictions as Weaver.

An inmate does not have a protectable interest in his custodial classification. Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999); Wilson v. Budney, 976 F.2d 957, 958 (5th Cir. 1992). As stated above, prison officials must regularly deal with inmates who do not get along with others, and restrictions are necessary in order to prevent injuries and disruptions. Prison officials are authorized and obligated to maintain order within the correctional institutions, and generally courts will not interfere with administrative decisions that reasonably relate to this goal. See Lerma v. Estelle, 585 F.2d 1297, 1298 (5th Cir. 1978).

McKnight has failed to establish a claim that the prison officials were deliberately indifferent to his personal safety. Newton, 133 F.3d at 308. His conclusory allegations of retaliation and conspiracy do not support a claim under 42 U.S.C. § 1983. Priester v. Lowndes County, 354 F.3d 414, 423 n.9 (5th Cir. 2004); Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999). Any verbal abuse or threats he may have endured, without accompanying physical harm, are not actionable. Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997).

McKnight will be granted permission to proceed as a pauper in this action. A prisoner complaint filed in forma pauperis may be dismissed if it is frivolous. 28 U.S.C. § 1915(e)(2)(B)(i). Such a complaint is frivolous if it lacks an arguable basis in law. Talib v. Gilley, 138 F.3d 211, 213 (5th Cir. 1998). This complaint

will be dismissed because it is frivolous. As stated above (see footnote 1), McKnight has filed at least two prisoner complaints, which have been dismissed as frivolous. Having accumulated three such dismissals, McKnight is **ADVISED** that he will be required to pay the filing fee in advance before filing another prisoner civil rights complaint unless he demonstrates that he is in imminent danger of serious physical harm. 28 U.S.C. § 1915(g).

### III. Conclusion

The court **ORDERS** the following:

1. The Application to Proceed In Forma Pauperis (Docket Entry No. 2) is **GRANTED**.

2. This cause of action, filed by Ernest Lee McKnight, TDCJ-CID #1226211, will be dismissed because it is frivolous. 28 U.S.C. § 1915(e).

3. The TDCJ-CID Inmate Trust Fund is **ORDERED** to deduct 20% of each deposit made to McKnight's inmate trust account and forward the funds to the Clerk on a regular basis, in compliance with 28 U.S.C. § 1915(b)(2), until the entire filing fee ($350.00) has been paid.

4. The Clerk is directed to provide a copy of this Memorandum Opinion and Order to the parties; the TDCJ - Office of the General Counsel, P.O. Box 13084, Austin, Texas 78711, Fax Number 512-936-2159; and the administrator in charge of the Sanctions List, United States District Court, Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler, Texas 75702.

**SIGNED** at Houston, Texas, on this 25th day of January, 2007.

SIM LAKE
UNITED STATES DISTRICT JUDGE